STATE of Minnesota, Respondent,

v.

Elliot B. HOLLY, Appellant.

No. C8–84–62.

Court of Appeals of Minnesota.

June 5, 1984.

Hubert H. Humphrey, III, State Atty. Gen., Thomas L. Johnson, Hennepin County Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by LANSING, P.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Elliot B. Holly appeals from an order denying a petition for postconviction relief. On January 29, 1982, Holly was convicted of criminal sexual conduct in the first degree in violation of Minn.Stat. §§ 609.342(d) and 609.11. Holly moved for a new trial or a *Schwartz* hearing. Minn.R.Crim.P. 26.-03, subd. 19(6). Both were denied. On September 30, 1983, Holly petitioned for postconviction relief contending that (1) the evidence was insufficient as a matter of law to convict him; (2) the court committed reversible error by refusing to permit cross examination of the complainant regarding her prior delusion of pregnancy; (3) the trial court committed reversible error when it refused to sequester the jury during deliberations; and (4) the trial court committed reversible error when it reinstructed the jury during deliberations. The petition was denied. Holly now appeals. We reverse and remand for a new trial.

## FACTS

The trial court submitted this matter to the jury at about 11:30 a.m. on the second day of the trial. Over the objections of both the prosecution and the defense, the trial court allowed the jury to return home overnight during the deliberations.

In the morning of the third day of deliberations, the following took place:

(Jury still deliberating)

THE COURT: The record should reflect that the defendant has been returned here to court. The prosecutor that tried the case is unavailable today and the defense attorney, a member of the Public Defender's office is unavailable as he is engaged in Municipal Court. I have advised the defendant I want to give the CRIMJIG 3.04, which I already had previously given to the jury in my original instructions to them, because this jury has been out since Wednesday, about 11:30, and today is Friday. I want them to do something one way or the other, and I would assume that the defendant is interested, too, you know, right?

THE DEFENDANT: Yes.

MRS. ALEXANDER: Pam Alexander for the State, Your Honor.

THE COURT: Okay. Do you waive your right to have your lawyer here? We are trying to get one for you.

THE DEFENDANT: I don't have no lawyer anymore?

THE COURT: You have got a lawyer. I just want to give them a little instruction that I already gave them just to tell them to get busy.

THE DEFENDANT: Oh.

THE COURT: I want to know if you would waive that. You don't have to.

THE DEFENDANT: It is up to you.

THE COURT: No, no, it is up to you. It is a matter of whether I do it now or wait 15 minutes for your lawyer here, because I am giving it anyway.

THE DEFENDANT: All right.

THE COURT: You see? What do you want to do?

THE DEFENDANT: Waive it.

THE COURT: Waive it?

THE DEFENDANT: Yes, Sir.

THE COURT: All right. Have the jury brought in.

(Whereupon, the jury was brought into the courtroom)

THE COURT: Members of the Jury, without disclosing to the Court how you stand, the Court wishes to reread a portion of its previous instructions "in order for you to return a verdict whether guilty or not guilty. Each juror must agree with the verdict. Your verdict must be unanimous. You should discuss the case with one another and deliberate with a view toward reaching agreement if you can do so without violence to your individual judgment. You should decide the case for yourself, but only after you have discussed the case" thoroughly

"with your fellow jurors and have carefully considered their views. You should not hesitate to re-examine your views and change your opinions if you become convinced it is erroneous, but you should not surrender your honest opinion simply because other jurors disagree or merely in order to reach a verdict." [1] Can this Court anticipate a verdict one way or the other before noon? Who is the foreperson?

THE FOREPERSON: I am the foreperson, foreman. I don't know what you want me to tell you.

THE COURT: I don't want you to tell me anything. I am only asking for a verdict, one way or the other.

THE FOREPERSON: We are close. I think we are close, possible.

THE COURT: Well, doesn't make any difference. You have the rest of the day. The sheriff will take them back into deliberation.

(The jury was sent back to deliberate)

Approximately three hours later the jury returned with a verdict of guilty.

## ISSUES

1. Did the trial court err when, over objection of both the prosecutor and defense, it allowed the jury to go home in the evenings during deliberations?

2. Did the trial court err when it reinstructed the jury during deliberations?

## ANALYSIS

1. Minn.Stat. § 631.09 provides for jury sequestration after the charge has been given and states in part that the jury shall be kept together in some private and convenient place, without food or drink except water, unless otherwise ordered by the court ... and it shall be returned into court when agreed, or when so ordered by the court. In the case of mixed juries counties shall provide adequate, separate quarters for male and female jurors with proper accommodations and, in the event the coun-

ty fails to provide proper accommodations, the court shall order the jurors kept in a suitable hotel for the night. At the time of Holly's trial, Rule 26.03, subd. 5(1), Minn.R.Crim.P. was silent with regard to sequestration during deliberations. The statute, however, is clear. A jury "shall be kept together" and if the county does not have proper accommodations, the court "shall order the jurors kept in a suitable hotel for the night."

■ The State maintains that the phrase "unless otherwise ordered by the court" modifies the clause beginning "shall be kept together" in addition to the phrase "without food or water" and consequently gives the trial courts discretion to decide whether to sequester the jury during deliberations. This construction is contrary to a plain reading of the statute and to case law. In 1871, the Supreme Court construed a sentence which is almost identical to the one the State construes and held that in a criminal case all separations of the jury after the case has been given to them is contrary to the plain meaning of the statute and an error in law. *State v. Parrant,* 16 Minn. 178, 180–1, Gil. 157 (1871). By 1914, the case law had liberalized somewhat. The court in *State v. Georgian,* 124 Minn. 515, 517, 145 N.W. 385 (1914), held that "[t]he separation of jurors is presumptively prejudicial, unless it clearly and affirmatively appears that no prejudice has resulted." This holding controls decision in this case. The trial court's allowing the jurors to separate *over the objection of both the prosecution and the defense* was presumptively prejudicial and is reversible error.

■ Since the separation was presumptively prejudicial the trial court, at the least, should have conducted a voir dire of the jury on the following morning to determine from juror testimony if any outside influences, including newspapers, radio, television and conversation, were improperly brought to bear upon the jury. The trial court should then have estimated the prob-

---

1. The quoted portion is CRIM JIG 3.04.

able effect of those influences on a hypothetical average jury. *State v. Cox,* 322 N.W.2d 555 (Minn.1982). Since no such determination was made by the trial court in this case, the presumption of prejudice was not overcome.

The possibility of exposure to potentially prejudicial material creates a problem of constitutional magnitude. If a juror is exposed to prejudicial material, the defendant is deprived of the right to an impartial jury and the right to confront and cross examine the source of the material. *Id.* at 558 (citing *Parker v. Gladden,* 385 U.S. 363, 364, 87 S.Ct. 468, 470, 17 L.Ed.2d 420 (1966) (per curiam)). Quite apart from the issue of permitting the jury to separate overnight over objection, the court should have determined first, if there was exposure to potentially prejudicial material and second, if the exposure was prejudicial.

The State contends that the recent case, *State v. Harris,* 333 N.W.2d 873 (Minn. 1983), supports their position that the sequestration decision rests within the trial court's discretion. We do not agree. In *Harris,* the court acknowledged that it did not address the question whether the trial court could separate a jury over defense objection. Rather, it addressed the question whether the trial court could separate a jury when the defense attorney not only did not object, but suggested the procedure which the trial court used. The court held that under these circumstances, the defendant "must be deemed to have forfeited his right to have the issue considered on appeal." *Id.* at 876.

The state also contends that this case is similar to cases where a defense motion for jury sequestration during trial was denied. However, sequestration *during* trial is governed by Rule 26.03, subd. 5(1), Minn.R. Crim.P. which specifically grants discretion to the trial court to decide whether to allow jurors to separate during trial. Minn.Stat. § 631.09 governs jury sequestration after the charge has been given and does not address sequestration during trial.

Finally, we note that effective August 31, 1983, Rule 26.03 provides that *"[w]ith*

*the consent of the defendant* the court, in its discretion, may allow the jurors to separate over night during deliberation." (Emphasis added). This new rule, while not applicable to this case, is consistent with the statute and case law considered in this matter.

2. Having determined that reversible error has occurred in this case, we need not reach the other issues raised by Holly. Nonetheless we observe that Holly's claim that the evidence was insufficient to support the conviction is not persuasive and note that the proceedings which took place on Friday morning could have constituted an additional ground for reversal. The trial court effectively coerced the jury into rendering a verdict when it *sua sponte* inquired about their deliberations and then told them that "I am only asking for a verdict, one way or the other ... You have the rest of the day." It is error to charge the jury that a case must at some time be decided. *State v. Martin,* 297 Minn. 359, 211 N.W.2d 765 (1973). There is no requirement that a trial end with either a verdict of guilty or not guilty, for a 'hung jury' is a legitimate end of a criminal trial. *Id.* at 367, 211 N.W.2d at 769.

We also note that the proceedings raise legitimate questions about the voluntariness of the waiver of counsel.

Finally, while unnecessary to decision, we observe that while Minn.Stat. § 631.09 has been updated to some extent, another update is in order. The statute provides that jurors are to be kept together without food or drink except water unless otherwise ordered by the court. This language is over a hundred years old and is reminiscent of a time when jurors were the virtual prisoners of court officers. A citizen juror serves as an arm of the court in resolving disputes between fellow citizens. A clause in a statute which provides that a juror be denied anything but water is punitive and inappropriate and should be removed.

## DECISION

We hold that the trial court's allowing the jurors to separate over the objection of the defense was presumptively prejudicial and in error. Since no determination was made regarding the effect that any outside influences may have had, we reverse and remand for a new trial.